**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **16-05593-hb**

**ORDER**

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**04/26/2017**



US Bankruptcy Judge
District of South Carolina

Entered: 04/26/2017

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 16-05593-HB |
| Kimberly Anne Versace, | Chapter 13 |
| Debtor(s). | **ORDER** |

**THIS MATTER** came before the Court for a hearing on the Objection to Homestead Exemption filed by Founders Federal Credit Union[1] and Founders' Objection to Confirmation of Debtor Kimberly Anne Versace's proposed Chapter 13 plan.[2] After consideration of the evidence and testimony presented, the parties' arguments, and applicable law, the Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1),[3] overruling the objection to exemption but denying plan confirmation.

### FINDINGS OF FACT

Versace filed a petition for Chapter 13 relief on November 4, 2016 (the "Petition Date"). She proposed a 36-month plan with total payments to the trustee of $31,300.00, designated for priority, administrative, and general unsecured claims.[4] Versace scheduled more than $131,000.00 in general unsecured debts, including Founders' credit card claim in the amount of $16,447.21.[5] Founders challenges the sufficiency of Versace's proposed distribution to unsecured creditors and her claim of a homestead exemption.

---

[1] ECF No. 13.
[2] ECF Nos. 2 & 10.
[3] Made applicable to these contested matters pursuant to Fed. R. Bankr. P. 7052 and 9014.
[4] ECF No. 25, filed Mar. 27, 2017. This amended plan was filed the day before the hearing to take into consideration the increased net monthly income reflected in the second amended Schedules I and J and to increase payments after Founders objected to Versace's initial plan. Versace is current on her secured debt service and proposed to pay those debts directly to creditors outside of the plan.
[5] POC No. 1-2, filed Feb. 28, 2017.

The homestead exemption property, located in Waxhaw, North Carolina, was purchased in 2012 and is titled in the names of Versace and her father. The property has a scheduled value of $130,000.00, encumbered by a mortgage of approximately $82,000.00. Both Versace and her father signed the note and mortgage. Versace previously contributed funds to the improvement of this property and pays part of the mortgage. However, Versace has only lived there for a short time from April to July 2016.[6] Versace and her 10 year-old son then moved 20 miles away to Fort Mill, South Carolina, where they now live in an apartment.[7] The property in Waxhaw is occupied by Versace's 73 year-old father (since 2012), Versace's 20 year-old daughter (since August 2016), and Versace's grandchild (born in September 2016). Pursuant to S.C. Code Ann. § 15-41-30(A)(1), Versace claims this property is the residence of one or more of her dependents.

From October 2015 to July 2016, Versace was not working full time and had limited income.[8] From July 2016 to the Petition Date, Versace was employed and earned an annual salary of $95,000.00. She changed jobs post-petition in November 2016, which increased her annual salary to $125,000.00. Although her job is based in Fort Mill, she travels for work throughout the United States, and estimates she is away from home approximately 10 nights each month. When she travels, Versace's son is cared for by her ex-husband in his home. He lives near Fort Mill and assists financially with their son's afterschool care. Versace testified that she accepts this arrangement in lieu of the court-ordered monthly child support.

---

[6] At the time the Waxhaw property was purchased, Versace lived with her husband and children in another home she owned. In 2015, Versace separated from her husband and moved to an apartment in Indian Land, South Carolina and lived there from November 2015 to April 2016.

[7] Versace and her son have lived in two different apartments in Fort Mill since the move in July 2016.

[8] Versace's Statement of Financial Affairs lists gross income from "wages, commissions, bonuses, tips" from January 1, 2016 through the Petition Date as $37,000.00.

Versace calculated her current monthly income as $67,035.96 (Official Form 122C-1) based on the income she received during the six-month period immediately preceding the Petition Date.[9] On Official Form 122C-1, Versace calculated her household size as five, combining the Waxhaw household with her own. The applicable median family income in South Carolina for a household of five is $79,381.00.[10] Therefore, Versace presented herself as below the median income level, proposed a plan that is 36 months in duration, and did not calculate her disposable income under the means test.

Versace testified that she previously claimed her father and daughter as dependents in her tax returns, but did not do so in 2015. At the time of the hearing, Versace had not prepared her 2016 tax returns, but testified that she intended to claim all of these family members as dependents for that year. She did not provide sufficient evidence to convince the Court this would be appropriate.[11]

Versace's father receives monthly Social Security income of $1,500.00, which is deposited into his personal account. The total mortgage payment on his Waxhaw home is $700.00, and the budget submitted into evidence reveals that his income is sufficient to pay the mortgage and many of the basic expenses for the Waxhaw household. Versace testified that she reimburses her father for one-half of the mortgage payment and contributes to the utilities there. She also helps her father with his medical expenses, credit card debt, and other living expenses. Versace sends her father a check for some of these expenses, and

---

[9] This amount does not include her father's Social Security income.

[10] Compared to the median family income of $54,905.00 for a household size of two in South Carolina.

[11] For example, 26 U.S.C. § 152(d) requires, *inter alia*, that in order for an individual to constitute a "qualifying relative" to claim as a dependent on tax returns, the relative must be an individual "with respect to whom the taxpayer provides over one-half of the individual's support for the calendar year in which such taxable year begins . . ." Considering Versace's lack of income, her father's income and support for the second household, and the fact that her daughter did not move into her father's home until August 2016, it is not clear from the evidence that these individuals qualify as Versace's dependents in 2016 under the Internal Revenue Code.

some she pays directly. Versace's father owns a car and can drive. Versace testified that her father is not physically able to actively assist with childcare for Versace's grandchild, but there was no evidence that he requires any care to live independently.

Versace's adult daughter has not lived with her in a number of years. There is no evidence that Versace provided financial assistance for her daughter from age 18 until August 2016 when she moved into the Waxhaw home with Versace's father. Versace testified that since that time, she has provided diapers and clothing for her grandchild and assists her daughter with groceries. Versace's daughter has a GED, but does not work and has never held a job. She makes no financial contribution towards expenses, other than the WIC benefits that cover the grandchild's formula, and she does not collect child support. Versace provided little information about her daughter's plans or ability to support herself going forward. Versace's father and daughter did not testify at the hearing.

### DISCUSSION AND CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (L) and this Court may enter a final order.

### I.     VERSACE MAY CLAIM THE HOMESTEAD EXEMPTION

Pursuant to Fed. R. Bankr. P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed." Section 522(b) of the Bankruptcy Code provides that debtors can choose to exempt from the bankruptcy estate that property which is exempt under the applicable state or federal law. South Carolina has opted out of the federal exemptions. 11 U.S.C. § 522(b)(2). Under South Carolina law, a debtor may "exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding . . . [t]he debtor's aggregate interest, not to exceed fifty thousand

dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . ." S.C. Code Ann. § 15–41–30(A)(1).

"The rationale for Homestead exemptions is well established: to protect from creditors a certain portion of the debtor's property, and to prevent citizens from becoming dependent on the State for support." *Holden v. Cribb*, 349 S.C. 132, 140, 561 S.E.2d 634, 639 (Ct. App. 2002) (citing *Scholtec v. Estate of Reeves*, 327 S.C. 551, 560, 490 S.E.2d 603, 607 (Ct. App. 1997)). In support of this purpose, courts are to construe the homestead exemption liberally in favor of debtors. *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000); *In re Sims*, 421 B.R. 745, 751 (Bankr. D.S.C. 2010). Additionally, "[i]t is a basic principal [sic] of bankruptcy law that exemptions are determined as of the date that a bankruptcy petition is filed." *In re Gill*, C/A No. 11-80976, 2011 WL 4712087, at *2 (Bankr. M.D.N.C. Aug. 19, 2011) (citing *In re Orso,* 283 F.3d 686, 691–92 (5th Cir. 2002)); *Dean v. LaPlaya Investments Inc.,* 319 B.R. 474, 478 (Bankr. E.D. Va. 2004).

"[W]hen a debtor claims a *state-created* exemption; the exemption's scope is determined by state law . . ." *Law v. Siegel*, 134 S. Ct. 1188, 1196–97, 188 L. Ed. 2d 146 (2014) (emphasis in original) (citations omitted). South Carolina's exemption statute does not define the term "dependent of the debtor." However, in South Carolina, "[s]tated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent – one who relies on another for the reasonable necessities of life." *Day v. Day*, 216 S.C. 334, 342, 58 S.E.2d 83, 86–87 (1950) (discussing who may be a dependent entitled to benefits under South Carolina Workers' Compensation law). Additionally, Black's Law Dictionary defines "dependent" as "[s]omeone who relies on another for

5

support; one not able to exist or sustain oneself without the power or aid of someone else." BLACK'S LAW DICTIONARY 449 (10th ed. 2014).[12]

As of the Petition Date, Versace's daughter and grandchild relied on Versace and her father to provide their reasonable necessities of life. *Day*, 216 S.C. at 342, 58 S.E.2d at 86-87. Applicable law instructs the Court to construe the exemption liberally in Versace's favor. *Sims*, 421 B.R. at 751. Therefore, based on the evidence presented to the Court and in light of the liberal scope of the homestead exemption, Founders has failed to meet its burden under Fed. R. Bankr. P. 4003(c) to prove Versace's homestead exemption claim in the Waxhaw home is improper. Accordingly, Founders' Objection to the Homestead Exemption is overruled.

## II. VERSACE'S PROPOSED PLAN CANNOT BE CONFIRMED

A different analysis is required for confirmation under § 1325 and Versace bears the burden of proof. *In re Martellini*, 482 B.R. 537, 541-42 (Bankr. D.S.C. 2012) ("Debtor has 'the burden of proving by a preponderance of the evidence that [his] plan meets the confirmation requirements of § 1325(a), including the good faith requirement of § 1325(a)(3).'" (quoting *In re Bridges*, 326 B.R. 345, 349 (Bankr. D.S.C. 2005))). Applying this analysis and burden of proof, the Court finds Versace has overstated her

---

[12] *See In re Preston*, 428 B.R. 340, 343-44 (Bankr. W.D.N.C. 2009) (considering the Black's Law Dictionary definition of "dependent" and the North Carolina state courts' use of the related term "dependent spouse," which had been defined as one who is "actually and substantially" dependent upon another for maintenance and support or is "substantially in need of such maintenance and support" from the other, to conclude that the estranged husband who was supporting himself was not the debtor's dependent for exemption purposes); *In re Crawford*, 511 B.R. 395, 400 (Bankr. W.D.N.C. 2014) (utilizing the same interpretation to find that the debtor's great-uncle was not a dependent for homestead exemption purposes because the debtor did not provide substantial support, he received Social Security and Veterans Administration retirement benefits that were sufficient to pay his bills, and the debtor provided him with care rather than financial support); *see also In re Holt*, 357 B.R. 917, 923 (Bankr. M.D. Ga. 2006) (relying, in part, on the Black's Law Dictionary definition of "dependent" to find that the Chapter 7 trustee did not meet his burden of proving the debtors' 22 year-old daughter and grandson could not be claimed as dependents for homestead exemption purposes when they lived at property owned by the debtors at the time of filing, were claimed as dependents on the debtors' income tax return for the prior year, and the daughter had not had steady employment).

household size to present herself as a below-median income debtor, inappropriately reducing her repayment period from 60 to 36 months. 11 U.S.C. § 1325(b)(4). Therefore, she has failed to show that her plan can be confirmed over Founders' objection.

The Fourth Circuit addressed household size in detail in *Johnson v. Zimmer*, 686 F.3d 224 (4th Cir. 2012). In that case, the appellate court found no error in the bankruptcy court's utilization of the "economic unit" approach and calculation of a debtor's household size to include fractional portions of two minor children (depending on the amount of time spent under the same roof with the debtor and considering the financial realities) even though debtor and her ex-husband shared custody and expenses. *Id.* at 240.

The Fourth Circuit rejected the "income tax dependent approach" to determine household size, finding it may inappropriately exclude "minor children who live with the debtor, but whom by formal or informal agreement the debtor does not claim on his or her tax return. Nor would it necessarily allow a debtor to claim as a member of his or her 'household' step-children, a cohabitating fiancé, live-in elderly parents, and the like." *Id.* at 239. The court also discussed the "heads on beds" approach, which simply counts the individuals that live in a home with the debtor to determine household size. *Id.* at 235. The Court stated that:

> to allow debtors to broadly define their "households" so as to include individuals who have no actual financial impact on the debtor's expenses . . . would lead to an artificially high calculation of the debtor's "amounts reasonably necessary to be expended" each month, and thus to an incorrect determination of the debtor's disposable income and ability to pay creditors. This result would be entirely at odds with the stated purpose of the BAPCPA[.]

*Id.* at 236. The court found that "mere physical presence or a federal income tax status" is not determinative of a person's inclusion or exclusion in a household, but rather the question is whether a person's "'income or expenses are inter-mingled or interdependent

7

with [the] debtor' and whether the individuals 'are acting as a single economic unit.'" *Id.* at 237-38 (quoting *In re Morrison*, 443 B.R. 378, 386 (Bankr. M.D.N.C. 2011)). The court found the more flexible:

> economic unit approach is consistent with § 1325(b), the BAPCPA, and the Code as a whole. By examining the financial interdependence of individuals to determine whether someone is an economic part of the debtor's household, bankruptcy courts are able to avoid over- and under-inclusive results that would result by artificially defining "household" according to factors unrelated to which individuals within a residence impact the debtor's financial situation. The approach is flexible because it recognizes that a debtor's "household" may include nonfamily members and individuals who could not be claimed as dependents on the debtor's federal income tax return, but who nonetheless directly impact the debtor's financial situation[.]

*Id.* at 237 (citations omitted).

Unlike the facts here, in *Johnson* and most cases utilizing the "economic unit" approach to determine household size, the interdependence discussions involved family members that either: (1) live within the same residence as the debtor, but only part-time; or (2) live with the debtor, but may not be members of the debtor's traditional family. *See e.g., id.* at 226, 239; *In re Ford*, 509 B.R. 695, 697, 700 (Bankr. D. Idaho 2014) (involving a former stepson that stayed with the debtor at least once a week); *In re Herbert*, 405 B.R. 165, 169-71 (Bankr. W.D.N.C. 2008) (involving the debtor's biological child with his girlfriend and his girlfriend's eight children from a prior relationship, with whom the debtor lived with). Although the Fourth Circuit mentioned that in some cases a bankruptcy court must exercise its discretion to accommodate the reality of a debtor's situation, nothing in the *Johnson* decision indicates that such discretion is boundless. Versace asks the Court – at the expense of her creditors – to expand her household size to include individuals that do not live with her at all, and who she has no legal obligation to support. Further, the evidence shows that the two households do not "inter-mingle" their funds, are not

8

"interdependent," and do not operate as a single "economic unit." Rather, Versace merely supplements the expenses and debts of the members of the Waxhaw household. The instruction provided by the Fourth Circuit gives no indication that the economic unit approach should be stretched this far. Based on these facts, Versace's household size is two: Versace and her 10 year-old son, who reside in an apartment in Fort Mill together most of the time.

Even if the evidence supported a finding to the contrary, the plan cannot be confirmed for other reasons, including the fact that without just cause, Versace proposes use of a portion of her income to pay her father's creditors ahead of her own. Accordingly, the Court cannot find that her plan is presented in good faith and all of her projected disposable income is applied to the plan.[13] As proposed, the current plan provides Versace with a "head start" as opposed to a "fresh start" and cannot be confirmed pursuant to § 1325(a)(3) and (b)(1) and (2).

**IT IS, THEREFORE, ORDERED THAT:**

1. Founders' Objection to the Homestead Exemption is overruled and Versace may claim an exemption in the property located in Waxhaw, North Carolina;

2. confirmation of the proposed plan is denied; and

3. Versace may file an amended Chapter 13 plan that complies with this Order and supporting documents within **fourteen (14) days**.

**IT IS SO ORDERED.**

---

[13] For a debtor with below-median income, disposable income and "reasonably necessary expenses" are determined under § 1325(b)(2) by using Schedules I and J. *See In re Cleary*, 357 B.R. 369, 372-73 (Bankr. D.S.C. 2006) ("For a below median income debtor, as we have here, the amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor are determined in the context of the estimated average monthly expenses reported on Schedule J. These expenses must undergo judicial analysis, in the face of an objection, as to reasonableness and necessity; or as some might say, 'the old fashion way.'" (citing *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006))).